-IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| KRISTINA JONES & KIM MARRS, individually and on behalf of others similarly situated, | * * * * * | 4:07-cv-400 |
| Plaintiffs, | * * | |
| v. | * * | |
| CASEY'S GENERAL STORES, | * * | ORDER |
| Defendant. | * * | |

Before the Court is Plaintiffs', Kristina Jones ("Jones") and Kim Marrs ("Marrs")

(collectively "Plaintiffs"), motion to preliminarily certify the present action as a collective

action, pursuant to 29 U.S.C. § 216(b), and to issue notice to potential opt-in collective members.

Clerk's No. 64.19.  Defendant filed a resistance to the motion (Clerk's No. 64.51) and Plaintiffs

replied (Clerk's No. 74).  A hearing was held on the matter on October 11, 2007.  The matter is

fully submitted.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiffs filed the present action in the Iowa District Court for the Northern District of

Iowa on May 30, 2007.  *See* Clerk's No. 64.3.  The case was transferred to the Southern District

of Iowa, pursuant to 28 U.S.C. § 1404(a), on August 30, 2007.  *See* Clerk's No. 64.59.  In their

Complaint, Plaintiffs assert that Defendant failed to properly pay overtime compensation to its

assistant managers, as required by the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201

et seq.  Specifically, Plaintiffs, on behalf of themselves and on behalf of a class of persons

"similarly situated," allege that during their employment as assistant managers with Defendant,

they "regularly worked more than forty (40) hours per week, but were not compensated for their overtime hours pursuant to the FLSA." Compl. ¶ 3. More specifically, Plaintiffs allege that "Defendant failed to accurately record the actual hours worked by its assistant managers. Rather, Defendant required its assistant managers to sign off on pre-approved schedules regardless of the hours they actually worked." *Id.* ¶ 26.

## II. FLSA COLLECTIVE ACTION CERTIFICATION

### A. *Applicable Law*

The FLSA provides that an action may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" for an employer's failure to pay overtime compensation. 29 U.S.C. § 216(b). Such an action under the FLSA is known as a "collective action" and is intended to facilitate the interests of judicial economy and to aid in the vindication of plaintiffs' rights by the pooling of resources. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989) (considering collective actions in the context of the Age Discrimination in Employment Act of 1967). A collective action under § 216(b) differs from a class action under Federal Rule of Civil Procedure 23. Like a class action, "[a] collective action serves the ends of avoiding a multiplicity of duplicate actions." *Mares v. Caesars Entm't, Inc.*, No. 4:06-cv-0060, 2007 WL 118877, at *2 (S.D. Ind. Jan. 10, 2007). Unlike a class action, however, which includes all putative class members unless they specifically opt out of the litigation, a collective action requires potential collective members to specifically opt-in to the litigation. *Compare* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.") *with* Fed. R. Civ. P. 23(c)(2)(B) ("For any class

certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances . . . that the court will exclude from the class any member who requests exclusion. . . ."). While not mandatory, courts have the authority to facilitate the opt-in process by authorizing the named Plaintiffs to issue notice of the litigation to potential collective members. *See Hoffman-La Roche, Inc.*, 493 U.S. at 169.

In determining whether a case is an appropriate one in which to issue notice, district courts in the Eighth Circuit use a two-step analysis. *See*, *e.g.*, *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159 (D. Minn. 2007); *Davis v. Novastar Mortgage, Inc.*, 408 F. Supp. 2d 811 (W.D. Mo. 2005); *Dietrich v. Liberty Square L.L.C.*, 230 F.R.D. 574 (N.D. Iowa 2005); *Resendiz-Ramirez v. P & H Forestry, LLC.*, No. 07-cv-1028, 2007 WL 2849577 (W.D. Ark. Sept. 27, 2007). In the first phase of the analysis, the Court must examine the pleadings and affidavits of the proposed action and determine whether the potential plaintiffs are sufficiently similarly situated to conditionally certify the collective action. *Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)); *see also Vennet v. Am. Intercontinental Univ. Online*, No. 03C5928, 2003 WL 23150111, at *1 (N.D. Ill. Dec. 30, 2003) (explaining plaintiffs need not provide "conclusive support," but they "must provide an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees"). Because courts have minimal evidence at this phase of the inquiry, courts use a fairly lenient standard and will generally certify a collective action conditionally. *Parker*, 492 F. Supp. 2d at 1164; *see also Smith v. Heartland Automotive Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (noting that plaintiff's burden at conditional certification stage is "not rigorous"). In effect, courts grant

conditional certification for the purpose of notice and discovery. *See Mueller v. CBS, Inc.*, 201 F.R.D. 425, 428 (W.D. Pa. 2001). The case then proceeds as a collective action throughout discovery. *Id.*

The second phase of the inquiry, typically precipitated by a motion for decertification by the defendant, is usually undertaken after discovery is largely completed. *See id.* At this second stage, courts have much more information and can make a factual determination on the similarly situated question. *See id.* If, at the second phase, the Court finds that the claimants are similarly situated, then the action proceeds to trial. If, on the other hand, the Court finds that the claimants are not similarly situated, the Court decertifies the action and dismisses the "opt-ins" without prejudice, and the collective action representatives can proceed to trial with their individual claims. *Johnson v. TGF Precision Haircutters, Inc.*, 319 F. Supp. 2d 753, 755 (S.D. Tex. 2004) (citing *Mooney*, 54 F.3d at 1214).

B. *Conditional Certification*

Here, Plaintiffs seek to conditionally certify this case in order to notify all potential plaintiffs of the case and to provide them with the opportunity to opt-in. Thus, Plaintiffs have the burden to satisfy the first phase of the inquiry. While Plaintiffs' burden at this stage is not invisible, neither is it onerous. *Parker*, 492 F. Supp. 2d at 1164. "Plaintiffs need not show that members of the conditionally certified class are *actually* similarly situated." *Fast v. Applebee's Int'l, Inc.*, No. 06-4146-CV-C-NKL, 2007 WL 1796205, at *3 (W.D. Mo. June 19, 2007) (emphasis added). Rather, conditional certification at the notice stage requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Novastar*, 408 F. Supp. 2d at 815.

Plaintiffs contend that they are similarly situated to one another and to potential class members because all are current or former assistant managers of Casey's General Stores, Inc. According to Plaintiffs, Casey's is uniform in the policies and procedures employed in its 1400 plus stores. Further, Casey's "uniformly administered and enforced its policies governing hours worked, including overtime, for all its assistant managers." Pls.' Br. at 6. Plaintiffs note that in all of its stores, Casey's assistant managers are paid nearly identical compensation and have nearly identical job duties. Plaintiffs claim that Defendant routinely required assistant managers to work extensive overtime without pay. Such work included: 1) work before the beginning of a scheduled shift; 2) work after the end of a scheduled shift; 3) covering the missed shifts of other employees; 4) cleaning store laundry outside of the store; 5) conducting price checks on local competitors; 6) receiving phone calls and communicating with store employees; 7) running errands; and 8) working through breaks. *Id.* According to Plaintiffs, Defendant posted weekly schedules in each store, setting assistant manager hours at approximately 32-40 hours per week. *Id.* "Assistant managers were required to sign off on these pre-printed schedules each week even if they worked past their scheduled hours, including overtime." *Id.* Further, Plaintiffs claim that Defendant encouraged its assistant managers to work extensive overtime, but willfully used an outdated and inaccurate time-keeping system, knowing that it would fail to accurately record the actual hours worked by Casey's assistant managers, and thus knowing that assistant managers would not be appropriately paid for overtime actually worked.

Defendant recognizes that Plaintiffs "appear to be alleging that Casey's maintained a corporate-wide policy or practice of avoiding the payment of overtime by requiring assistant managers to sign off on pre-approved schedules regardless of hours worked." Def.'s Br. at 3.

Defendant argues, however, that Plaintiffs' "conclusory allegations about a corporate-wide policy . . . is dead wrong and inconsistent with Plaintiffs' own payroll documents." *Id*. Defendant urge that Casey's express policy is to pay *all* nonexempt employees for all hours worked, as evidenced by Casey's policies which are detailed in its Employee Handbook. Defendant proffers numerous affidavits of current or former assistant managers who attest that they knew of Casey's policy regarding the recording of time actually worked, and that they were always paid for any overtime actually worked. Indeed, Defendant points to documentary evidence that the named Plaintiffs, Jones and Marrs, were in fact paid for hours they actually worked, rather than according to a pre-set schedule of hours.

Defendant's evidence of Casey's written policies about recording hours worked may well be compelling at some point in this litigation. At this stage, however, it is not. Defendant would have the Court rule now, prior to the formal commencement, let alone the completion of discovery, that Plaintiffs will be unable to successfully prove their claim that Defendant maintained a policy of denying overtime compensation to its assistant managers. Plaintiffs need not prove Defendant's liability at this stage of the proceedings, however. Even were Defendant's argument appropriate at this juncture, the mere fact that Defendant can demonstrate that it paid substantial overtime to multitudes of employees does not mean, as a matter of law, that Defendant could not have had a policy of discouraging or even denying overtime in situations when it believed it could get away with it. Nor does the fact that Casey's paid out substantial overtime negate or otherwise disprove Plaintiffs' claim that Defendant willfully used an outdated and inaccurate time-keeping system, knowing that it would fail to accurately record the actual hours worked by Casey's assistant managers, and thus knowing that assistant

managers would not be appropriately paid for overtime actually worked. Defendant is asking the Court to make a legal determination that Plaintiffs' allegations are without merit, a conclusion that would require the Court not only to weigh factual disputes, but to determine the credibility of the parties' competing allegations and documentary evidence as well. When considering conditional certification, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("[A] court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated."). Indeed, as discussed previously, the burden at the conditional certification stage is "very low," and Plaintiffs need only make a "'modest factual showing' that plaintiff[s] and the potential collective action members were victims of 'a common policy or plan that violated the law.'" *Id.* (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007)).

Casey's next argues that any deviation from Casey's written policies was the product of individualized choices made by a particular employee not to record his or her time for certain tasks. Specifically, Casey's points to the fact that, following Plaintiffs' filing of the Complaint in the present action, Casey's undertook a "thorough review of actual practices in the field." As part of this review, Casey's spoke to a number of its current and former assistant managers, and each "overwhelmingly confirmed that the allegations in Plaintiffs' Complaint of a company directive to not pay its Assistant Managers for all hours worked . . . were without merit." Def.'s Br. at 12. Indeed, Casey's notes that, out of more than 270 assistant managers interviewed, dozens claimed that they recorded and were paid for all hours worked. *Id.* at 13. To the extent that any of the interviewed assistant managers did not record their hours, the decision was an

individual determination not to report time, rather than the result of some company policy or directive. *Id*. After interviewing these assistant managers, Casey's next developed a questionnaire, which it sent out to 4,746 individuals who had worked as assistant managers for Casey's during the previous two year period. *Id*. at 16. The responses to these questionnaires, according to Casey's, overwhelmingly demonstrate that any decision in any particular Casey's store not to record time actually worked was the product of individual determination, and not the result of a company-wide directive. Thus, Casey's claims, each assistant manager's claim will require individualized factual determinations, making the present action an inappropriate one for collective action status. Defendant cites *Williams v. Accredited Home Lenders, Inc.*, No 1:05-cv-1681, 2006 WL 2085312, at *4-5 (N.D. Ga. July 25, 2006) in support of its contention that the claims in the present case are too individualized to warrant conditional collective certification.

In *Williams*, employees of Accredited Home Lenders, Inc., a large mortgage banking institution with offices and locations in several states, claimed that Accredited's branch managers violated the company's established overtime policies by requiring loan officers to work "off-the-clock." 2006 WL 2085312, at *4. Noting that substantial discovery had already been undertaken at the conditional certification stage, the district court found that there was sufficient evidence to bypass the first part of the two-step inquiry and conclude that the action was inappropriate to proceed as a collective action pursuant to the second step of the process. *Id*. at *4. Specifically, the district court found that every potential collective member would have to testify about his or her awareness of the company's overtime policies, and whether deviation from that policy was an individual decision or whether it was compelled by a superior. *Id*. Further, the court found that the plaintiffs had not shown a common policy of Accredited that

violated the FLSA, noting that Accredited had presented evidence that substantial overtime had been paid to its loan officers in the preceding two and one-half years. *Id*. Finally, the district court noted that, were the case to proceed as a collective, it would be "utterly unmanageable," and would result in excessive costs to the parties and a waste of judicial resources. *Id*. at *5.

The Court finds *Williams* distinguishable from the present case. In *Williams*, the district court bypassed the first, or conditional certification, stage of the two-step collective certification process on the basis that extensive discovery had already occurred. In particular, the court noted that the plaintiffs had disseminated informal notice of the lawsuit and the opportunity to opt-in. *Id.* at *3. Defendants had taken the depositions of around 20 opt-in plaintiffs and the plaintiffs had deposed numerous Accredited's senior managers in its retail division. No such depositions or extensive discovery have occurred here. Certainly, the questionnaires that Casey's sent out to its former and current assistant managers regarding overtime pay constitute substantial information that will likely be useful in the present action. The fact remains, however, that Casey's unilaterally sent the questionnaire to Casey's assistant managers, without court permission, and without any input from the Plaintiffs. The questionnaires focused on the particular issue of whether Casey's assistant managers spent time taking work related phone calls in their off duty hours. While Plaintiffs were eventually able, after court intervention, to obtain the completed questionnaires, the Court is loath to find that Casey's unilateral actions, and the information gleaned therefrom, is sufficient to constitute "substantial discovery," such that the Court should bypass the first step of the two-step process and deny Plaintiffs the opportunity to proceed, at least conditionally, as a collective action.

Casey's makes very reasonable arguments that highlight the difficulties that Plaintiffs

will face in proving Defendant's ultimate liability. For example, Casey's points out that Plaintiffs' declarations allege off-the-clock work associated with washing laundry, but 43% of Casey's stores have laundry facilities. Thus, assistant manager experiences will differ depending on whether the particular Casey's store in which the assistant manager works has a laundry facility or not. Likewise, Casey's points out that it has collected hundreds of declarations indicating that Casey's maintains uniform and clear policies prohibiting off-the-clock work and that any failure to comply with this policy was made by individuals. All of Casey's claimed evidence, however, was unilaterally obtained from current or former employees, most of whom likely had no knowledge whatsoever of the present lawsuit. Plaintiffs have not had the opportunity to subject the information proffered by Casey's to further evaluation, because the discovery process has not formally commenced. Despite Defendant's arguments that the Court should determine as a matter of law that this action should never proceed as a collective one, the fact remains that the focus at this stage of the proceedings is "not on whether there has been an *actual* violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005). Thus, the question before the Court is, quite simply, whether Plaintiffs have "established a colorable basis for their claim that a class of similarly situated plaintiffs exists." *Smith v. Heartland Automotive Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005). The Court concludes that Plaintiffs have made such a showing.

Plaintiffs have offered a reasonable amount of evidence that Casey's maintained a policy or plan that violated the law requiring employers to pay non-exempt employees overtime compensation. Most convincingly, Plaintiffs have proffered assistant manager responses to

Casey's own questionnaires. Within those responses, several employees attest that they were

informed by superiors that they could not claim overtime compensation:

* "My superior . . . informed that under no circumstances was I to report any calls or work performed for the company on my personal time to corporate . . . because she would be in trouble." Pls.' Ex. 1 at 0245.

* "I was also told in the beginning of my ass't man. training that [the manager] didn't care if I had to come in at 2:00 to get all paperwork done . . . but I couldn't sign in till 5:00." *Id*. at 0418.

* In response to the question, "Did you record on the sign-in/sign-out sheet ("schedule") all time actually spent taking and/or responding to work-related calls during your personal ("off-duty") time?", one employee marked "no" and wrote, "was told 'it was part of the job' and I couldn't sign in/out." *Id*. at 0571. Another employee checked "no" and wrote, "wasn't allowed b/c it would result in 'overtime.'" *Id*. at 0880. Yet another employee wrote, "do not even know what [sign in/sign out sheet] that is! Did not have one at our store." *Id*. at 1786. One other employee noted that she "was told it was part of my job." *Id*. at 1994.

* "While I was asst manager I was also told and expected to go to work at 4:30 am to complete my duties before the store opened. I was not allowed to clock in until 5:30 am." *Id*. at 0734.

* "If you got to work early and helped out, you still couldn't clock in until the time you were actually supposed to be there." *Id*. at 0810.

* "I could not record any overtime or I would get in trouble with corporate." *Id*. at 0987.

* "I was expected to survey and collect local gas prices daily while driving to work. . . . This time and mileage were not recorded nor reported, as it was an expected part of my Assistant Manger duties." *Id*. at 1149.

* "When I was an assistant manager in training, [the manager] told me to come in at 4 am, 1 hour earlier than [I] was supposed to and I could never clock in at 4 am." *Id*. at 1307.

* "I have put in hours that were not recorded because the Mgr. would take it off the schedule." *Id*. at 1428.

* "Neither myself or my manager was ever informed about keeping track of work related phone calls dealing with work. Our area supervisor advised us she was

unaware of this also." *Id*. at 1617.

\* "I was told that I could not write my time down on the sign-in sheet, because it would set me into overtime, which was something she [the manager] was not allowed to pay me for." *Id*. at 1674.

\* "I do not think any of them [assistant managers] ever wrote down their time as we are always told by the district manager 'no overtime.'" *Id*. at 2564.

\* " I always felt I should get paid for things like this [taking phone calls during personal time] but was told I could not record the time for pay." *Id*. at 4611.

\* "[T]here were times that I would get called into the store during my off time and I would write my time down on the time sheet, and then when the manager saw the extra time written in she would erase it. When I questioned the manager on this, she told me that I was not scheduled for those times so she couldn't pay me for it." *Id*. at 5209.

\* "I do recall that the regular schedule was 5 a.m. - 2 p.m. and sometimes shorter due to the fact that my area supervisor at that time stated that it's not good to have a lot of overtime hours. I also recall that if I did work a night shift, that I would just have to write down the 5 a.m.- 2 p.m., as if those were the actual hours worked, however they were not, and if I was lucky enough, the area supervisor would let me leave a hour or two earlier than 2 p.m. to make up for the time worked at night which was 6 to 7 and 1/4 hours worked the night before, therefore cutting me out of 4 to 5 hours pay of actual worked time, but was told that if I wanted to be manager I would have to get used to those hours." *Id*. at 5758.

While in most cases, the superior telling the assistant manager that no overtime could be claimed was a store manager; in some cases, the superior was an area or district manager. The numerous responses (far more than delineated here) of assistant managers indicating that they were not permitted to claim overtime span a multitude of Casey's store locations in a variety of states. Thus, contrary to Defendant's assertion that all Store Managers and Area Supervisors are trained in the proper manner of recording and reporting employee hours, it is apparent that far more than a handful did not abide by Casey's written policies. This is more than ample evidence to establish a colorable claim that a common policy or plan was maintained within the Defendant

corporation that violated the FLSA.

Plaintiffs have additionally pointed to evidence of Department of Justice investigations into Casey's time-keeping system which support Plaintiffs' theory that Casey's willfully used an outdated and inaccurate time-keeping system, knowing it would deprive assistant managers of rightfully earned overtime compensation.  The possibility, or even the likelihood, as Defendant's assert, that Plaintiffs will be unable to ultimately prevail on their claim does not change the result at this juncture of the case, i.e., that Plaintiffs have satisfied the burden necessary for conditional certification of the collective action.  Defendant may proffer its arguments against continued certification at the second, or decertification stage of the proceedings, after substantial and reciprocal discovery has been completed.  Accordingly, the Court hereby conditionally certifies the following collective:  "Any employees who are or have been employed by Casey's as an assistant manager at any time since November 1, 2004, and who have unresolved claims for unpaid overtime."

### III.  FORM OF NOTICE

With regard to the form of notice to be issued to putative opt-in plaintiffs, the parties have made several filings, consistent with this Court's order on the matter at the hearing on the certification issue.  On October 17, 2007, Defendant filed its objections (Clerk's No. 122) to Plaintiffs' proposed notice to potential collective members (Clerk's No. 64.19 at 45-48).  Plaintiffs responded to Defendant's objections (Clerk's No. 125) and Defendant replied (Clerk's No. 126).[1]  The Court has reviewed the filings, considered the parties requested additions and

---

[1]  Defendant's Motion to File an Overlength Brief in Support of its Reply (Clerk's No. 126) is GRANTED.

omissions, and hereby authorizes the following notice to be issued in this litigation:

## NOTICE OF COLLECTIVE ACTION LAWSUIT

*Jones et al. v. Casey's General Stores, Inc., United States District Court for the Southern District of Iowa, Central Division, Court Docket No. 4:07-cv-0400*

**TO:**          **All present and former employees of Casey's General Stores, Inc. who were designated, paid or employed as assistant managers in the United States at any time between November 1, 2004 to the present.**

**RE:**          **Fair Labor Standards Act ("FLSA") Unpaid Overtime Lawsuit filed against Casey's General Stores, Inc.**

**PLEASE READ THIS NOTICE CAREFULLY.  THIS NOTICE COULD AFFECT YOUR LEGAL RIGHTS.**

### I.  INTRODUCTION

The purpose of this Notice is to inform you of the existence of a collective action lawsuit which you may join, to advise you of how your rights may be affected by this lawsuit, and to instruct you on the procedure for participating in this lawsuit if you so desire.  As described more fully below, if you are eligible and wish to participate in this collective action, you must timely complete, sign, and submit the "Opt-In Consent" form attached to this Notice.

### II.  DESCRIPTION OF THE LAWSUIT

On May 30, 2007, named Plaintiffs Kristina Jones and Kimberly Marrs filed this lawsuit in the United States District Court for the Northern District of Iowa against Defendant Casey's General Stores, Inc. ("Casey's") on behalf of themselves and all other past and present employees who were designated, paid, or employed as assistant managers in the United States within the past three (3) years.  The lawsuit was subsequently transferred to the Southern District of Iowa.

Plaintiffs allege that Casey's failed to pay overtime compensation in violation of the federal Fair Labor Standards Act ("FLSA").  Specifically, this lawsuit alleges that Casey's has and continues to have a policy of requiring their employees in the assistant manager position to work in excess of forty (40) hours per week without paying them overtime compensation as required by federal wage and hour laws.  Plaintiffs seek to recover unpaid overtime compensation, including interest, statutory penalties, reasonable attorneys' fees, and litigation costs and expenses.

Casey's denies any wrongdoing or liability and contests all claims that have been asserted.  Specifically, Casey's maintains that it has a written policy of paying its assistant

managers for all time worked, did not require or authorize its assistant managers to work without recording their time, and pays its employees for all time recorded, including overtime, as appropriate.

### III.  COMPOSITION OF THE COLLECTIVE ACTION

The named Plaintiffs seek to sue on behalf of themselves and also on behalf of other assistant managers with whom they are similarly situated.  Specifically, the named Plaintiffs seek to sue on behalf of any employees who are or have been employed by Casey's as an assistant manager at any time since November 1, 2004, and who have unresolved claims for unpaid overtime.

### IV.  YOUR RIGHT TO PARTICIPATE IN THIS SUIT

If you fit the definition above and want to participate in this action, you must take affirmative steps to indicate your intent to join.  You may join this suit (that is, you may "opt-in") by mailing (in the enclosed, pre-paid, addressed First Class envelope) or faxing the completed and signed "Opt-In Consent" form to Plaintiffs' counsel at the following address:

Scott H. Peters
Peters Law Firm, P.C.
233 Pearl Street
Council Bluffs, IA 51502
FAX: (712) 328-9092
ATTN: CASEY'S GENERAL STORE OVERTIME ACTION

**To guarantee your right to seek payment in this lawsuit, this form must be returned in sufficient time to have Plaintiffs' counsel file it with the Court on or before the Court-ordered deadline of February 1, 2008.  If you fail to return the "Opt-In Consent" form to Plaintiffs' counsel in time for it to be filed with the Court on or before the above deadline date, you will not be able to participate in the lawsuit.**

You may opt-in, and participate in this suit, regardless of whether you participated in the survey regarding time spent answering and responding to phone calls sent out by Casey's, and regardless of whether you signed a "Declaration" presented to you by Casey's or its lawyers.

### V.  EFFECT OF JOINING THIS SUIT

If you choose to join in the suit, you will be bound by the judgment or settlement, whether it is favorable or unfavorable.  If the court rules in favor of Casey's, you will be entitled to no relief if you join this action.  While this suit is pending, it is possible that you may be required to respond to written questions, sit for an oral deposition, and/or testify in court. Plaintiffs' counsel are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fee.  If there is a recovery, Plaintiffs' counsel will receive a

part of any settlement obtained or money judgment entered in favor of all members of the collective class.  By joining this lawsuit, you designate the named Plaintiffs as your agents to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees, costs and expenses, and all other matters pertaining to this lawsuit.  These decisions and agreements made and entered into by the representative Plaintiffs will be binding on you if you join this lawsuit.

## VI.  NO LEGAL EFFECT IN NOT JOINING THIS SUIT

If you choose not to join in this suit, you will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable to Plaintiffs and the collective class.  If you choose not to join in this lawsuit, you are free to file your own lawsuit.

Normally, the FLSA contains a limitations period of at least two (2) years and potentially up to three (3) years for the filing of overtime claims running from the date(s) the overtime hours were actually worked.  You have multiple deadlines if you worked overtime on multiple occasions.  To guarantee your right to seek the maximum recovery, return your "Opt-In Consent" form immediately so Plaintiffs' counsel may file it with the Court and preserve your rights.  If you choose not to file an "Opt-In Consent" form, the statute of limitations on any FLSA claims will continue to run.

## VII.  NO RETALIATION PERMITTED

Federal law prohibits Casey's from taking any action whatsoever against you because you have completed and submitted the "Opt-In Consent" form or otherwise exercised your rights under the Fair Labor Standard Act.  You may not be discharged or retaliated against if you choose to participate, or not participate, in this action.  Further, you may, but are not required to discuss the facts and circumstances surrounding this lawsuit with Casey's or its officers.

## VIII.  YOUR LEGAL REPRESENTATION IF YOU JOIN

If you choose to join this suit, your interests will be represented by the named Plaintiffs through their attorneys, as collective action counsel.  Plaintiffs' collective action counsel are: Scott H. Peters, Esq. of PETERS LAW FIRM, PC, 233 Pearl Street, Council Bluffs, IA 51502, (712) 328-3157, Fax: (712) 328-9092, email: scott.peters@peterslawfirm.com; Jon Tostrud, Esq. of CUNEO, GILBERT & LADUCA, LLP, 1801 Century Park East, Suite 2400, Los Angeles, CA 90067, (310) 556-9621, Fax: (310) 556-9622, email: jtostrud@cuneolaw.com; R. Brent Walton, Esq. of CUNEO, GILBERT & LADUCA, LLP, 507 C Street NE, Washington, DC 20002, (206) 390-6263, Fax: (202) 789-1813, email: bwalton@cuneolaw.com; James B. Zouras, Esq. and Ryan F. Stephan, Esq. of STEPHAN ZOURAS, LLP, 205 North Michigan Ave., Suite 2560, Chicago, IL, (312) 233-1550, Fax: (312) 233-1560, email: laywers@stephanzouras.com; and Bart Goplerud, Esq. of HUDSON, MALLANEY & SHINDLER, PC, 5015 Grand Ridge Drive, Suite 100, West Des Moines, IA 50265, (515) 223-4567, Fax: (515) 233-8887, email:

jbgoplerud@hudsonlaw.net.

## IX.  FURTHER INFORMATION

You may seek further information about the Notice, filing an "Opt-In Consent" form, or seek answers to other questions concerning this lawsuit by contacting an attorney of your choice, including the attorneys identified above.

THIS NOTICE HAS BEEN AUTHORIZED BY THE HONORABLE ROBERT W. PRATT, CHIEF JUDGE OF THE UNITED STATED DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA.  THE COURT HAS AUTHORIZED NOTICE AS A PROCEDURAL MATTER AND HAS MADE NO DETERMINATION AS TO THE MERITS OF THE PLAINTIFFS' CLAIMS OR THE DEFENDANT'S DEFENSES.

## IV.  MANNER OF NOTICE

Potential collective members are entitled to receive "accurate and timely notice concerning the pendency of the collective action. . . ."  *Hoffmann-La Roche, Inc.*, 493 U.S. at 170.  The Court has considered the parties arguments regarding the manner of notifying potential collective members and makes the following conclusions:  Defendant shall provide to Plaintiffs' counsel, within seven days of the date of this order, a computer-readable data file containing the names, addresses, and telephone numbers of all potential opt-in collective members.  Plaintiffs' counsel are authorized to send the list provided by Defendant to the United States Post Office, and to use skip tracing, if necessary, to obtain the best possible contact information for the potential opt-in collective members.

Plaintiffs may distribute the notice to potential opt-in collective members via first-class mail only.  *See Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002) ("Historically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential [collective] members."); *Romero v. Producers Dairy Foods, Inc.*, 235

F.R.D. 474, 492-93 (E.D. Cal. 2006) ("First class mail is ordinarily sufficient to notify class members who have been identified."). Plaintiffs may include a first-class, pre-stamped return envelope and an Opt-In Consent form with each notice mailed, but may not enclose anything else in the Notice mailings, such as cover letters. Likewise, Plaintiffs may not manipulate the notice in any way, such as by attaching "sign here" stickers to it. Plaintiffs may only mail the Notice materials to potential collective members one time, except in the event that the Notice materials are returned as undeliverable. In such an instance, Plaintiffs may engage a vendor to secure follow-up addresses for mail returned as undeliverable and may make a second mailing of the Notice materials, though any second mailing may not be made more than sixty days after the first Notice mailing.

With regard to Plaintiffs' request to reference a website or "1-800" number in the Notice materials, the Court denies the request. Plaintiffs may maintain a website and a "1-800" number, however, no reference shall be made to them in the Notice materials. Once putative collective members have opted-in to the litigation, Plaintiffs' counsel may inform them, as official collective members, of any relevant website or "1-800" number.

## V. CONCLUSION

The Court has considered all arguments proffered in the briefings of the parties regarding both the certification of the collective action in this matter and regarding the appropriate form and manner of notice. To the extent that any particular request or argument is not specifically incorporated into or addressed in this ruling, such request or argument is denied. Accordingly, for the reasons stated herein, Plaintiff's motion for conditional certification (Clerk's No. 64.19) is GRANTED.

IT IS SO ORDERED.

Dated this ___31st___ day of October, 2007.

ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT