IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| KRISTINA JONES, KIMBERLY MARRS, MELISSA MARTENS, TAMMY McKINNIS, TINA SANDERS, KELLY EKKER, CANDACE UZZLE, MARY SCHNOBRICH, and FONETTA WAYNE, individually and on behalf of others similarly situated, | * | 4:07-cv-400 |
| Plaintiffs, | * | |
| v. | * | |
| CASEY'S GENERAL STORES, INC., ROBERT J. MYERS, RONALD M. LAMB, TERRY W. HANDLEY, ROBERT C. FORD, and JULIA L. JACKOWSKI, | * | ORDER ON MOTIONS |
| Defendants. | * | |

Before the Court is a joint motion by the parties entitled "Joint Motion for Final Approval." Clerk's No. 370. Also before the Court is Plaintiffs' "Motion for Final Approval of Attorneys' Fees, Reimbursement of Expenses, and Separate Awards for named Plaintiffs and Deponents." Clerk's No. 369. The Court held a fairness hearing on October 9, 2009. Clerk's No. 374. Pursuant to the Court's request, Plaintiffs submitted additional documentation on their request for attorneys' fees on October 14, 2009. Clerk's No. 376.[1] The matters are fully submitted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[1] Exhibits A and B of Plaintiffs' supplemental submission is not publically docketed, as it was submitted to the court for *in camera* inspection only.

Plaintiffs filed the present action in the Iowa District Court for the Northern District of Iowa on May 30, 2007. *See* Clerk's No. 64.3. The case was transferred to the Southern District of Iowa, pursuant to 28 U.S.C. § 1404(a), on August 30, 2007. *See* Clerk's No. 64(59). In their Complaint,[2] Plaintiffs assert that Defendants failed to properly pay overtime compensation to its assistant managers, as required by the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., and as required by various state wage and hour laws. Specifically, Plaintiffs, on behalf of themselves and on behalf of a class of persons "similarly situated," allege that "Defendants failed to pay Plaintiffs and putative class members all of the wages they earned, including regular wages and/or overtime compensation, as well as mileage and other reimbursements." Fourth Am. Compl. ¶ 26.

On October 31, 2007, the Court granted conditional certification of a collective FLSA class and authorized the named Plaintiffs to disseminate judicial notice of the action to putative collective members. Clerk's No. 127. Of over 6,000 current and former Casey's Assistant Managers provided notice, approximately 10% opted to join the collective litigation. *See* Joint Mot. for Final Approval ¶¶ 6-7. On April 6, 2009, after much discovery and numerous hearings, the parties informed the Court that they had reached a tentative agreement to settle all issues in the case. *See* Clerk's No. 355. On May 18, 2009, the Court conditionally certified, for purposes of settlement only, the proposed class of current and former Assistant Managers. Clerk's No. 365. The Court appointed class counsel and a Claims Administrator, and authorized the form

[2] Multiple incarnations of the Complaint were filed throughout the course of the litigation, concluding with Plaintiffs' Fourth Amended Complaint, filed on August 27, 2008. Clerk's No. 285. All versions of the Complaint, however, alleged that Casey's Assistant Managers were not properly compensated for all hours worked.

and content of Notices and Claim Forms to be provided to class members. *Id*. Of 7,917 putative class members provided with notice of the settlement, 1,294 submitted timely claim forms, and only eight opted-out of the settlement. Joint Mot. for Final Approval ¶ 19. Combined with the 478 opt-in class members deemed eligible to participate in the settlement, and excluding two individuals that provided deficient class claim forms, there are a total of 1,770 individuals eligible for settlement payments. *Id*.

The terms of the proposed Settlement Agreement in this action provide for a $5,000,000.00 settlement package. Of this sum, the 1,770 individuals eligible for payment will receive total compensation of $3,068,250.24, or approximately $45.12 for each individual for each week they worked for Defendants.[3] Plaintiffs request that the Court award $250,000.00 in litigation costs and expenses, and an attorneys' fee award for Plaintiffs' counsel totaling $1,581,750.00, as contemplated in the Settlement Agreement. Further, Plaintiffs request separate awards from the Settlement Fund of $10,000.00 for each named Plaintiff and $1,000.00 for each deponent, to be awarded in addition to any pro rata share of the Settlement Fund to which those individuals are otherwise entitled.

## II. LAW AND ANALYSIS

### A. *Class Certification*

In its Preliminary Order, the Court found that the class and collective "meets the requirements for certification under Fed. R. Civ. P. 23 in the settlement context."[4] Clerk's No.

---

[3] According to an affidavit provided by an employee of the Claims Administrator, "[t]here are a total of 68,002 weeks eligible payment." Clerk's No. 370 (Declaration of Ryanne Cozzi).

[4] The class and collective identified in the Court's preliminary approval of the Settlement is:

365 at 2. Accordingly, the Court conditionally approved the Settlement Class as designated. To grant final certification of this litigation as a class action, the Court must find that the putative Class meets the four requirements found in Rule 23(a), and that it also fits within one of the categories of Rule 23(b). *See* Fed. R. Civ. P. 23(a) and (b). The decision to certify a class action is within the discretion of the Court. *See Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir. 1994); *Reynolds v. Nat'l Football League*, 584 F.2d 280 (8th Cir. 1978). Rule 23(a) requires, as prerequisites to a class action, that: 1) the class be so numerous that joinder of all members is impracticable; 2) questions of law or fact are common to the putative class members; 3) claims and defenses of the representative parties are typical of those of the class; and 4) the representative parties will fairly and adequately protect the interest of the class. Fed. R. Civ. P. 23(a).

The key to determining whether the numerosity requirement of Rule 23(a)(1) is satisfied rests on the impracticability of joining potential class members. The parties have informed the Court that the final Settlement Class in this matter consists of 1,770 persons. This is clearly sufficient to satisfy the numerosity requirement. *See, e.g., Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (affirming certification of a class of 74 persons); *Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996) (finding that a class of 500 members satisfied the numerosity requirement). Satisfaction of the numerosity prong does not

---

> All current and former Assistant Store Managers who filed a timely Consent to join this litigation ("opt-ins"), and any current or former Assistant Store Manager employed by Defendants in Iowa, Illinois, Indiana, Kansas, Missouri, Nebraska, Minnesota, Wisconsin, and/or South Dakota, during the time period May 7, 2005, through December 31, 2008 (hereinafter the "Settlement Class").

Clerk's No. 365 at 2.

require that joinder be impossible, but only that plaintiffs will suffer a strong litigational hardship or inconvenience if joinder is required. *See Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765 (8th Cir. 1971).

As to the commonality requirement in Rule 23(a)(2), it is well established that not every question of law and fact must be common to the entire class. Rather, it must be shown that the course of action giving rise to the cause of action affects all putative class members, and that at least one of the elements of that cause of action is shared by all of the putative class members. *See Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 573 (D. Minn. 1995) (citing *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993)). Put simply, to satisfy the commonality requirement under Rule 23(a), a party need simply show that "'the legal question linking the class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (quoting *Paxton*, 688 F.2d at 561). The burden imposed by this requirement is light and easily met in most cases. *See In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999); Newberg on Class Actions § 3:10 (4th ed.). The present litigation contains numerous questions of law that link the Settlement Class members and that are substantially related to the resolution of the litigation. Specifically, the Court finds the following questions of law and fact, amongst others, are sufficient to satisfy the commonality requirement of Rule 23(a)(1): 1) each putative class member shares the claim that Defendants failed to keep true and accurate records of the hours employees worked; 2) each putative class member shares the claim that Defendants were obligated to compensate employees for work-related phone calls while "off duty"; and 3) each putative class member shares the claim that Defendants failed to properly compensate him or her

for all hours worked under the FLSA and under relevant state wage and hour laws. In the instant case, then, the Court finds that the Plaintiffs have sufficiently shown a nexus between issues of both law and of fact to satisfy the commonality requirement of Rule 23(a).

With regard to the requirement that the claims of the class representative be typical of the claims or defenses of the class, this requirement is typically met where there are "other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (citations omitted). A named plaintiff's claim is typical "if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 561. The burden is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Alpern*, 84 F.3d at 1540; *Paxton*, 688 F.2d at 561-62 (holding that typicality is met when the claims of the named plaintiffs emanate from the same event or are based upon the same legal theory as the claims of the class members). Moreover, typicality is closely related to commonality and "a finding of one generally compels a finding of the other." *See Buychks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 333 n.13 (N.D. Ill. 1995) (citing Newberg § 3.13). In this case, the typicality requirement is easily met as the named Plaintiffs, like all class members, allege that they were injured by Defendants' course of conduct in improperly calculating and compensating employees for all hours worked. Finally, with regard to the requirement of fair and adequate representation, the Court must evaluate whether the named Plaintiffs are able to vigorously prosecute the interests of the class and whether there are "conflicts of interest between named parties and the class they seek to represent." Fed. R. Civ. P. 23(a)(4). "As to adequacy, the inquiry of Rule 23(a)(4) 'serves to uncover conflicts of interest

between named parties and the class they seek to represent.'" *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434 (S.D. Iowa 2001) (quoting *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625 (1997)). "The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc.*, 521 U.S. at 626, n.20 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, n.13 (1982)). It appears clear in this matter that the named Plaintiffs are fully capable of prosecuting the interests of the putative class members through competent counsel of record. Moreover, it appears that the named Plaintiffs understand the basic issues involved in this litigation, understand their responsibilities as Class Representatives, and have shown a willingness to fulfill these responsibilities. Accordingly, the Court determines that the named Plaintiffs can adequately represent the members of the putative class.

As noted, *supra*, in addition to finding that the requirements of Rule 23(a) have been satisfied, the Court must also find that the Class fits within one of the categories set forth in Rule (23)(b). In the present case, the Court is satisfied that the requirements of Rule 23(b)(3) are fulfilled. To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: "Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Amchem Prods., Inc.*, 521 U.S. at 615. A claim will generally satisfy the predominance requirement "when there exists

generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *See In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995); *In re Workers' Compensation*, 130 F.R.D. 99, 108 (D. Minn. 1990). Given that the ultimate factual complaint underlying the claims of the named Plaintiffs and the Class Members is that Defendants had a policy and practice of failing to properly document and compensate Casey's Assistant Managers for all hours worked, the Court concludes that few variations exist in the claims or the factual bases underlying the claims. Similarly, the Court finds the legal claims and theories, in addition to the factual and legal issues in the case, would be subject, in large part, to generalized proof applicable to the entire class, and that such issues predominate over any issue that may be subject only to individualized proof. Because common questions of law and fact predominate over questions affecting only individual members of the class, the Court concludes that the predominance requirement is satisfied.[5]

The Court also finds that a class action is superior to other available methods for the fair and efficient settlement of the present litigation. Because the class sought to be certified is for settlement purposes only, the Court need not concern itself with questions of manageability that would arise were this action to proceed in litigation. *See Amchem Prods., Inc.*, 521 U.S. at 620. Accordingly, the Court hereby approves and certifies the Settlement Class for purposes of settling the present litigation.

---

[5] The record supports a conclusion that the requirements of Rule 23(b)(2) are also satisfied, that is: "1) the defendants have acted on grounds generally applicable to the plaintiff class; and 2) plaintiffs seek injunctive or declaratory relief from that action." *See Weaver v. Reagen*, 701 F. Supp. 717, 722 (W.D. Mo. 1988).

B. *Fairness, Reasonableness, and Adequacy of Settlement Terms to Class Members*

1. *Class benefits*.

As with the certification of a class for purposes of a class action, Rule 23 governs the settlement of class action litigation. A class action may not be dismissed or compromised without a court's approval. *See* Fed. R. Civ. P. 23(e). Court approval of a class action settlement is necessary to assure that the interests of absent class members, as well as those of the named plaintiffs, are protected. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). Before the Court may approve a settlement, it must assess whether the interests of all class members have been protected and it must be convinced that the proposed settlement is fair, reasonable, and adequate before the settlement is given final approval. *Grunin*, 513 F.2d at 123; *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135 (8th Cir. 1984). The burden is on the proponents of the settlement to convince the Court by a preponderance of the evidence. *See In re Gen. Motors*, 594 F.2d 1106, 1126 n.30 (7th Cir. 1979); Manual for Complex Litigation, Second, § 30.44. The decision whether to finally approve the proposed settlement is within the sound discretion of the Court. *See In re Flight Transp.*, 730 F.2d at 1135.

"The district court must consider a number of factors in determining whether a settlement is fair, reasonable, and adequate: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) (citing *Grunin*, 513 F.2d at 124 (citations omitted)). "Although in approving a settlement the district court need not undertake the type of detailed investigation that trying the case would involve, it must nevertheless provide the appellate court with a basis for determining

that its decision rests on 'well-reasoned conclusions' and not 'mere boilerplate.'" *Id.* (quoting *In re Flight Transp.*, 730 F.2d at 1136 (internal and additional citations omitted)). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Id.* (citing *Grunin*, 513 F.2d at 124; *Armstrong v. Bd. of Sch. Dir. of Milwaukee*, 616 F.2d 305, 314-15 (7th Cir. 1980)).

In the present case, the Settlement Agreement was negotiated and agreed to by the parties and counsel with the aid of an experienced mediator. The litigation was overseen on both sides by experienced and capable counsel. Both Plaintiffs and Defendants face significant risks and expenses in proceeding forward with litigation in this matter. Indeed, while the Plaintiffs have gathered substantial evidence that Defendants violated the FLSA and various state wage and hour laws, the Court has consistently maintained a concern about the viability of this case as either a class or a collective action, given the likelihood that substantial individualized factual inquiries would likely be required. Despite these considerations, the proposed Settlement offers substantial compensatory relief to the members of the Settlement Class for the wrongs alleged in the Fourth Amended Complaint. Indeed, the amount of compensation to be paid to each class member likely exceeds what any individual plaintiff might be able to recoup on his or her own.

Another factor contributing to the reasonableness, fairness, and adequacy of the Settlement is the fact that the Settlement provides for reasonable attorneys' fees and expenses, as well as certain premiums for named Plaintiffs and for class members who were deposed. These costs were formally agreed to in the Settlement terms and will not in any way diminish the benefit to any class member. Finally, the Court notes that only eight potential class members

have opted out of the litigation, while 16.3% of the putative class submitted claim forms. No objections have been lodged against the proposed Settlement Agreement by either the class or opt-in collective members and no class members appeared at the fairness hearing in this matter. "Such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement." *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (N.D. Ill. 2001); *see also* 4 Newberg on Class Actions §11:58 (4th ed.); *but see In re Gen.Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig*., 846 F. Supp. 330, 334 (E.D. Pa. 1993) (noting that lack of objection does not necessarily indicate approval, but rather, may reflect other reasons why class members didn't register objection, including lack of interest, time, information, etc.).

Considering all the factors articulated in *Van Horn*, the Court believes and finds that the factors weigh in favor of approving the Settlement Agreement. In addition to those factors, the Court is satisfied that the "two additional, overarching principles" enunciated in *Grove v. Principal Mutual Life Insurance Co*. have been satisfied. *See Grove*, 200 F.R.D. at 445. First, the Settlement is the product of arm's length negotiations and, thus, is presumed to be fair and reasonable. *Id*. (citing Manual for Complex Litigation §30.42 (3d ed. 1997)). Second, the Court "should not substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Id*. (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999)). Accordingly, the Court believes that the evidence weighs in favor of approving the Settlement. As this Court stated in *Grove*:

> In the end, the Court is convinced the settlement is substantively fair and reasonable. It strikes a sensible balance between, on the one hand, an uncertain fate if litigation continues, and on the other, fairly calculable and substantial, though less then ideal, benefits that will quickly inure to the class under the terms of the agreement.

*Grove*, 200 F.R.D. at 447.

2. *Attorney's fees.*

As part of evaluating whether to approve the Settlement, the Court must also assess the reasonableness of the attorneys' fees proposed in the Settlement Agreement. The Settlement provides that Plaintiffs' counsel in this case will receive, subject to Court approval, up to 33 1/3% of the total $5,000,000.00 settlement package for attorneys' fees, plus expenses. Indeed, Plaintiffs' counsel requests that the Court approve an award of expenses totaling $250,000.00 and an attorneys' fee award totaling $1,581,750.00. Counsel has provided documentation to the Court demonstrating that total expenses exceeded the requested $250,000.00, and have submitted a lodestar calculation well in excess of the requested attorneys' fee award.[6] The Court has carefully reviewed all of the documentation submitted by the parties, including Affidavits of counsel regarding expenses, hourly rates, and time expended on the case, and finds that the proposed expenses and fees are fair and reasonable and adequately reflect the risk counsel took in pursuing the case and a fair market value for the services provided. This conclusion is supported by the tangible benefits conferred on the class as a result of the legal services provided by Plaintiffs' counsel, the complex nature of the litigation, the substantial risks involved, the quality of work performed, and the efficient manner in which this litigation was resolved.

[6] The lodestar calculation submitted by Plaintiffs' counsel totals $3,566,641.50, encompassing 8655.07 hours expended at rates ranging from $75-$100.00 per hour for legal assistants, and at rates ranging from $350-$650.00 per hour for counsel. Plaintiffs' counsel emphasize the reasonableness of their proposed lodestar calculation, and the actual attorneys' fee requested, by pointing out that in making their lodestar calculation, they omitted any potentially duplicative time, omitted all time spent responding to class member inquiries after May 2009, and omitted approximately 647 hours dedicated to the case by persons who spent less than 50 hours each working on the case.

3. *Incentive compensation to named Plaintiffs and deponents*.

The parties have requested that the Court authorize incentive compensation to each of the named Plaintiffs in the amount of $10,000.00, for the time and effort devoted in pursuing the present litigation. The parties further request that each class member deponent receive a $1,000.00 incentive payment. These amounts were specifically negotiated as part of the Settlement package and will not diminish the recovery contemplated for each individual class member. Courts routinely recognize and approve incentive awards for class representatives and deponents. *See, e.g., Gulino v. Symbol Tech., Inc.*, No. 06CV2810, 2007 WL 3036890, at * 2 (E.D.N.Y. Oct. 17, 2007) ("Payment to class representative can properly be included in class action settlements to the extent they are needed to compensate the named plaintiffs for the efforts they have made on behalf of the class."); *Nilsen v. York County*, 382 F. Supp. 2d 206, 215 (D. Me. 2005) (approving incentive payments of $5,000.00-$5,500.00 for class representatives and of $500.00 for deponents); *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) (approving greater awards for those who took a more active role in seeking class relief); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (approving class representative "incentive awards" where named plaintiffs took steps to protect interests of class members, thus effectuating "a Settlement that provides substantial economic and non-economic benefits to the Class Members"); *Huguley v. Gen. Motors Corp.*, 128 F.R.D. 81, 85 (E.D. Mich.1989) (noting that "named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation they have borne").

"It is, ultimately, in the settlement terms that the class representatives' judgment and the

adequacy of their representation is either vindicated or found wanting." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981). In the present case, and in the underlying state actions, the Court finds that the named Plaintiffs took substantial action to step forward and pursue the present litigation. Likewise, those who submitted to depositions furthered the litigation in immeasurable ways. Through these actions, substantial benefits on behalf of all Settlement Class members have been achieved. Accordingly, the Court concludes that the preferential treatment of the named Plaintiffs and deponents is not excessive, but is fair and reasonable under the circumstances. The Court, therefore, approves the proposed incentive award to the named Plaintiffs and to the deponents.

## III. CONCLUSION

For the reasons stated herein, the Joint Motion for Final Approval of Settlement (Clerk's No. 370) is GRANTED. Plaintiffs' Motion for Final Approval of Attorneys' Fees, Reimbursement of Expenses, and Separate Awards for named Plaintiffs and Deponents (Clerk's No. 369) is likewise GRANTED. Specifically, the Court orders as follows:

1) The Settlement Class is hereby certified and approved;

2) The Settlement is deemed fair, reasonable, and in the best interests of the class;

3) The request for attorneys' fees in the amount of $1,581,750.00 is approved; the request for an award of expenses in the amount of $250,000.00 is approved; the request for incentive payments of $10,000.00 to each named Plaintiff is approved; the request for incentive payments of $1,000.00 to each deponent is approved;

4) The action is dismissed in its entirety with prejudice;

5) Settlement Class members are hereby permanently enjoined from filing, joining, or prosecuting any claims, suits or administrative proceedings regrading claims released by the Settlement;

6) The parties and their counsel are hereby released from any protective orders entered by the Court in this case, except for the protective order controlling the handling of "Confidential Information" (see Docket No. 53), which shall remain in full force and effect;

7) The parties and counsel remain bound by the terms of the Stipulation of Settlement and Release, including without limitation, the Section on Confidentiality. The Court retains jurisdiction to enforce its terms.

Finally, in light of the pending Motion to Intervene filed by Touhy, Touhy, Buehler & Williams, LLP in this case (Clerk's No. 371), Plaintiffs' counsel is hereby ordered to retain that portion of the attorneys' fee intended to be allocated to Stephan & Zouras, LLP in escrow until further order of the Court.

IT IS SO ORDERED

Dated this ___22nd___ day of October, 2009.

ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT